The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner George T. Glenn, II. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
******************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and defendant Roadway Services, Inc. is a self-insured employer.
2. Plaintiff was an employee of defendant at its Kernersville, North Carolina, location at all relevant times herein when he allegedly contracted the occupational diseases he claims are compensable under the Act.
******************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of hearing, plaintiff was forty-five years old and had completed two years of education beyond the high school degree.
2. Plaintiff began working for the defendant on a part-time basis in December 1989 as a dock worker or freight handler. In September 1990, plaintiff began working on a full-time basis.
3. Prior to coming to work for defendant, plaintiff worked as an instrument man on surveyor crews; and in construction doing such things as painting, remodeling, refinishing cabinets, installing hardwood floors and carpet, and plumbing. He also worked as a mechanic and mail carrier.
4. Plaintiff worked between forty-five and forty-seven weeks per year. He normally worked forty hours per week and was paid $17.20 per hour.
5. Plaintiff's duties included loading and unloading tractor trailers for seven and a half hours per day five days per week. Plaintiff would first load the heavy freight onto the trailer first by using a fork lift. The heavy freight was pre-loaded onto skids to a height of approximately five feet. Then the smaller freight would be stacked by hand on top of the freight sitting on the skids.
6. The trailers that plaintiff would load were eight feet high on the inside and twenty-eight feet long.
7. The hand stacked freight weighed between one and one hundred pounds per piece with most of it weighing between ten to forty-five pounds.
8. In stacking the freight by hand, plaintiff would lift approximately fifteen pieces of freight per minute. The lifting of the freight by hand required plaintiff to flex his hands in a down motion to pick up the piece and then to lift the piece anywhere from chest height to over his head and flexing and/or extending his hands both backwards and forward. Plaintiff was flexing or extending his hands an average of thirty times per minute. The freight that plaintiff was loading by hand was being lifted from a height from just above the floor to just below his waist. The motion to lift the freight from the hand truck to on top of the skid was a twisting and turning motion.
9. In the spring of 1993, plaintiff developed tingling and numbness in both his hands and waist with the right being worse than the left. He sought medical attention in April or May of 1993, and by this time his symptoms included his index and middle fingers going numb with the problem being worse at night when his hands would go to sleep and lock.
10. On or about May 25, 1993, plaintiff was seen and treated by Dr. Younce at North Carolina Baptist Hospital. Dr. Younce referred plaintiff to Dr. Peter Donofrio, a neurosurgeon, for EMG testing.
11. Dr. Donofrio diagnosed plaintiff's condition as bilateral carpal tunnel syndrome with the right more severe than the left. Plaintiff was informed on or about June 7, 1993, that he had bilateral carpal tunnel syndrome.
12. On or about June 21, 1993, plaintiff became unable to perform his duties at work due to his occupational disease. Plaintiff told the defendant on or about June 23, 1993, that he was suffering from bilateral carpal tunnel syndrome and that it had been caused by his work with the defendant and that he was not able to work due to the same.
13. Defendant noted in its Form 19 filed with the Industrial Commission on April 11, 1994, that plaintiff was injured on June 21, 1993, that plaintiff's disability began on June 21, 1993, and that plaintiff's supervisor Bob Crook knew this on June 24, 1994. In that this form was filed on April 11, 1994, the court is taking judicial notice of this typographical error and noting that the date of notice was June 24, 1993.
14. Plaintiff's failure to give defendant written notice of this injury has not and did not prejudice defendant in that it knew within thirty days of plaintiff's diagnosis that plaintiff was suffering from the a work related occupational disease that plaintiff incurred as a result of working for defendant.
15. Plaintiff underwent surgical release of his right carpal tunnel on June 24, 1993. Plaintiff's condition improved as a result of the operation and he returned to work for the defendant on August 24, 1993.
16. The repetitive motions of flexing and extending of the wrists in picking up and then releasing the freight in performing his duties for defendant significantly contributed to the development of his bilateral carpal tunnel syndrome. The repetitive motions which plaintiff performed with his hands placed him at an increased risk of contracting bilateral carpal tunnel syndrome as compared to members of the general public.
17. Plaintiff was out of work from June 21, 1993 through August 23, 1993 as a direct result of his bilateral carpal tunnel syndrome. During this period he was unable to earn any wages. Plaintiff returned to work on August 24, 1993, and was able to gradually return to his regular position.
18. During the first of November 1993, plaintiff noticed pain and weakness in his left shoulder. Plaintiff sought and received treatment for this condition the later part of November 1993. Plaintiff's condition was not diagnosed until March 28, 1994, by Dr. Walton Curl.
19. Dr. Curl diagnosed plaintiff's condition as left rotator cuff tendonitis. Dr. Curl sent plaintiff to physical therapy for treatment and he took plaintiff out of work.
20. Plaintiff notified defendant on March 31, 1994, that he had contracted left shoulder tendonitis as a result of his work with defendant.
21. Plaintiff's shoulder did not respond to the treatment and on or about September 28, 1994, Dr. Curl performed a left shoulder arthrogram that revealed a partial rotator cuff tear.
22. Plaintiff underwent left shoulder arthroscopy surgery on February 2, 1995. Dr. Curl's post-operative diagnosis was left labral tear and partial rotator cuff tear.
23. Dr. Curl indicated that the repetitiveness of plaintiff frequently lifting the freight from below his knees to above his head as plaintiff was stacking the freight by hand, contributed significantly to plaintiff developing left shoulder tendonitis, left labral tear and partial rotator cuff tear. And, that the same motions that plaintiff performed placed plaintiff at an increase risk of contracting left shoulder tendonitis, left labral tear and partial left rotator cuff tear as compared to the general public.
24. Plaintiff was still under the care of his treating physician at the time of this hearing, and he had not reached maximum medical improvement. Plaintiff has not been released to return to work.
******************
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's bilateral carpal tunnel syndrome, left shoulder tendonitis, left labral tear and partial left rotator cuff tear are due to causes and conditions that are characteristic of and peculiar to his particular employment of defendant. Those conditions are not ordinary diseases of life to which the general public is equally exposed. Plaintiff has accordingly contracted the occupational diseases of bilateral carpal tunnel syndrome, left shoulder tendonitis, left labral tear and partial left rotator cuff tear.
2. On June 21, 1993, plaintiff's average weekly wage was $688.00, yielding $442.00, for plaintiff's bilateral carpal tunnel syndrome. Plaintiff's rate of compensation for the left shoulder occupational disease is $457.62 per week.
3. Plaintiff was temporarily totally disabled from June 21, 1993 through August 23, 1993, due to his bilateral carpal tunnel syndrome. Plaintiff returned to work for the defendant on August 24, 1993, at the same or greater rate of pay than he was making on June 21, 1993.
4. Plaintiff was temporarily totally disabled from March 17, 1994 through the date of this hearing and continuing until he has been released to return to work as a result of his left shoulder occupational disease
5. The medical treatment that Dr. Walton Curl has prescribed for plaintiff is reasonable and necessary to give relief or tends to lessen plaintiff's period of disability.
******************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Subject to counsel fees hereinafter approved, defendants shall pay to plaintiff compensation benefits at the rate of $442.00 per week for the period from June 21, 1993 through August 23, 1993, and benefits at the rate of $457.62 per week for the period from March 17, 1994 through the date of this hearing and forward until such time as plaintiff is no longer disabled and has returned to work or until further orders of the Industrial Commission. As much of said amount as has accrued, payment shall be made in a lump sum.
2. A reasonable attorney fee in the amount of 25 percent of the compensation approved and awarded for the plaintiff is approved and allowed for plaintiff's counsel. The attorney's fee shall be deducted from the compensation payable to plaintiff and shall be paid directly to plaintiff's attorney.
3. Defendants shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of the accidental injury he sustained. Payment shall be made when bills are approved pursuant to procedures established by the North Carolina Industrial Commission.
4. The issue of what amount of permanent disability, if any, is due the plaintiff shall be reserved for subsequent determination.
5. Defendants shall pay the costs.
FOR THE FULL COMMISSION
 S/ ______________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
S/ ______________________ DIANNE C. SELLERS COMMISSIONER
CMV/cnp/mj
11/4/96